THE COLUMBUS RY., POWER & LIGHT CO. *v.* LOMBARD.

48

(Decided March 15, 1929.)

*Messrs. Sharp, Schooler, Toland & Marshall,* for plaintiff in error.

*Mr. F. S. Monnett* and *Mr. Charles Schwenker,* for defendant in error.

HORNBECK J. This cause came into this court on a petition in error to reverse the judgment of the common pleas court.

The parties stand in this court in an order the reverse of that in the common pleas court, and will be referred to here as they appeared in the lower court.

The action was for damages for personal injuries.

Issues were joined, trial had to a jury and a verdict returned for plaintiff for $2,250. A judgment was rendered on the verdict, motion for new trial overruled, and exceptions noted.

The action was grounded on the claim of joint negligence of defendant company and Chester Brady (who, although made a party defendant, was not served with process), causing injuries to the plaintiff.

The amended petition sets up five specifications of

negligence against the defendant company; four of which relate to alleged violations of Sections 7 and 10 of Ordinance No. 17801 of the city of Columbus:

(1) Negligently continuing its car in motion westwardly at a speed of upwards of 15 miles per hour without checking the speed thereof.

(2) The absence of gong or other signals to warn plaintiff of its approach.

(3) Said motorman and conductor in charge of said street car failed to keep a vigilant watch for plaintiff then and there upon said street car tracks, and did not, upon the first appearance of danger, stop or check the speed of said car in order to prevent a collision with her.

(4) The motorman and conductor then and there saw plaintiff lying upon said tracks in her perilous position, or by reasonable care or vigilance on their part should have seen plaintiff in time to stop said street car.

(5) Defendant then and there negligently maintained a defective and inoperative device, commonly known as a "kid catcher," in the front of and under the front of said street car, so that said "kid catcher" did not and would not trip and catch the plaintiff on the ground and lift her upon said "kid catcher," thus saving plaintiff from injury.

Interrogatories were submitted to the jury to determine if the defendant company was negligent in maintaining and operating the "kid catcher," and, if so, if such negligence proximately caused injury to the plaintiff, all of which were answered in the affirmative.

If the case was properly submitted on this phase of negligence, the verdict should be sustained, though

there may be other errors apparent in the record. *Sites* v. *Haverstick,* 23 Ohio St., 626; *Ochsner, Admr.,* v. *Cincinnati Traction Co.,* 107 Ohio St., 33, 140 N. E., 644; *Hubert* v. *Kessler, Trustee,* 108 Ohio St., 584, 142 N. E., 38.

However, as other claimed errors were presented, argued, and briefed by both parties, we will consider and decide them in the order presented in the brief of counsel for plaintiff in error.

### Weight of Evidence.

(1) Refusal of the trial court to sustain motion of defendant below for directed verdict in its favor, made at the conclusion of plaintiff's testimony and renewed at the close of the case.

The theories of the parties at the trial as to the cause of the street car of defendant company striking plaintiff, and the consequent injury, were clearly defined and quite different.

The plaintiff contended that at about 10 o'clock on the night of the 25th of May, 1926, while waiting in the proper place on West Broad street, east of Stevens avenue, which place was well lighted, intending to board a street car of defendant company, Charles Brady negligently ran her down with an automobile and threw her onto the tracks and in front of the on-coming street car and into a place of danger; that she was in this position at a time when the street car was so far to the east of her that those in charge of the car had ample time in the exercise of ordinary care, and in the observance of the ordinance of the city of Columbus, to have avoided striking and injuring her, which obligations, in the particulars asserted in the petition, it failed to observe.

The defendant company put plaintiff on proof, denied that she was an intending passenger, and insisted that the negligence of Charles Brady was the sole cause of injury to plaintiff; that his auto impaired the view of the motorman on the street car; that the impact of the automobile against the body of plaintiff was so close in point of time with that of the street car that plaintiff was in front of the car an insufficient time for the motorman and conductor to have done anything in observance of the duty enjoined upon them which could have prevented the car striking plaintiff.

There is substantial support in the record of every claim necessary to establish the theory of plaintiff as to the producing cause of her injuries, as there is of the theory of defendant company.

The jury had a right, because of the discrepancy in the statements of the witnesses, to judge of their credibility and the weight of their testimony. The court cannot say that the trial judge was in error when he refused to sustain the motion for a directed verdict at the conclusion of plaintiff's testimony, nor that the verdict is manifestly against the weight of evidence.

*Special Instructions.*

The court, at the request of plaintiff, gave the following special instruction to the jury before argument: "Under the provisions of Section 10 of Ordinance No. 17801 of the City of Columbus, in force at date of this injury, it was the duty of the conductor and motorman in charge of the car described in the pleading to keep a vigilant watch for all teams, carriages and persons and obstructions upon or near the track of the company, and

upon the first appearance of danger to give warning and stop the car if necessary to prevent accident. I charge you that if the jury finds from the evidence that if either the conductor or motorman or both failed to so keep a vigilant watch as therein required by said provision of this ordinance and thereby failed to stop the car in time to prevent the car striking plaintiff, such violation of said section is negligence *per se,* or negligence in itself, and if such negligence was the proximate cause of the injury to plaintiff your verdict should be for the plaintiff.''

It is claimed that the failure of the court to incorporate in the instructions the exact phraseology of the ordinance, following the word ''company'' therein, viz., ''and upon the first appearance of danger to give warning and stop the car if necessary to prevent accident,'' was error.

It is advisable and safe procedure in charging on the violation of any law to use the specific language therein employed.

Of course, if in deviating from the practice the court retains the substance of the terms of the law and does not change it so as to add something to it or take something from it of consequence, no harm can be said to result.

The court, by his charge, in no event required more care of the company than the ordinance. It is probable that the instruction enjoined less care than demanded by the strict terms of the ordinance.

Under the charge, as given, the jury could not have placed the obligation on defendant company to stop its car sooner than at the ''first appearance of danger,'' which the ordinance required. It may have

been more lenient, and required the stop to be made only when the danger was imminent.

The court also gave this special charge before argument:

"I charge you that in this case the second amended petition charges the railway company and one Chester Brady with jointly injuring or contributing to the injury by reason of their joint negligence as set forth therein. If the jury find from the evidence herein that the plaintiff was an intending street car passenger at the corner of Stevens Avenue and West Broad street and that by reason of the joint or combined negligence of the railway company and Chester Brady, even if Brady's negligence were greater or less than the company's negligence, then your verdict should still be for the plaintiff and against the railway company alone.

"It is not essential that the railway company be the sole cause of the injury.

"This is true even if the railroad company's and Chester Brady's negligence jointly constituted the proximate cause of the injury."

It is obvious that the first paragraph of this charge is incomplete.

After the word "Brady" and before the word "even," the following language, or its equivalent, should have been used, the "plaintiff was proximately injured in some particular as alleged in the petition," making that portion of the charge read: "And that by reason of the joint or combined negligence of the railroad company and Chester Brady, the plaintiff was proximately injured in some particular as alleged in the petition."

The concluding paragraphs of the charge are

sound and might possibly have made the instruction intelligible.

However, assuming that it was incapable of understanding by the jury, we have the situation that a charge was given at the request of plaintiff which to the jury did not, in its entirety, state a correct proposition of law. Can it be said that this in itself was prejudicial error? We are of opinion that it cannot; that to amount to prejudice to the defendant something must affirmatively appear which had that effect. The omission in this special request was corrected in the general charge, where the subject was properly and fully covered.

### Special Requests of Defendant.

Defendant asked the court in its special charge No. 6 to take away from the jury any consideration of the specification of negligence in plaintiff's amended petition, touching the failure of the motorman to sound a gong. This was based upon the testimony of the plaintiff that she knew the car was approaching and had seen it for some time before it reached the place where she was standing; therefore, the sounding of a gong was unnecessary and the failure to observe this requirement of the ordinance was not negligence.

It was made negligence by the ordinance to fail to sound a gong at the first sign of danger to plaintiff, and the court was required to so charge. *Schell v. Du Bois, Admr.*, 94 Ohio St., 93, 113 N. E., 664, L. R. A., 1917A, 710. But the court was obliged to go further under the law of the same case and say to the jury that such negligence must appear to have been the direct and proximate cause of injury to the plaintiff.

If the sounding of the gong was a vain and unnecessary thing, the jury, under the facts, could not have found that the failure so to do caused injury to plaintiff. The trial judge, in his charge, very carefully explained to the jury the conditions under which the failure to sound a gong might be pertinent to the case.

The failure of the trial court to include in the instructions the proposition of contributory negligence of plaintiff is urged by defendant company. There is nothing in the record to suggest negligence on the part of plaintiff.

### Res Ipsa Loquitur.

The following interrogatories were submitted:

No. 1. "Do you find from the evidence that the plaintiff, Mrs. Lombard, was injured by the joint, and combined, negligence of the Columbus Railway, Power & Light Company, and the driver of the automobile, Chester Brady? A. Yes."

No. 3. "Do you find from the evidence that after plaintiff was thrown in front of the approaching west-bound car operated by the Columbus Railway, Power & Light Company, that the tripper or 'kid-catcher,' under such circumstances as shown by the evidence, should have caught her up and held plaintiff in the cage of the tripper? A. Yes."

No. 4. "Do you find from the evidence that such tripper failed so to do and passed above her and over her body? A. Yes."

Questions:

Question No. 1. "Was the accident unavoidable on the part of the defendant company? A. No."

Question No. 2. "If your answer to Question No. 1 is no, then answer this question: Did defend-

ant negligently maintain a defective and inoperative device called a 'kid-catcher' at the front of the street car in question and under the front of such car? A. Yes.''

Special charge No. 7, of the defendant, undertook to remove from the consideration of the jury the charge of negligence against the company based on its alleged failure to maintain a proper and operative ''kid-catcher'' on its street car. The court refused this request, charged the doctrine of *res ipsa loquitur,* and counsel for defendant insist this was error.

A full and detailed description of this device, the ''kid catcher,'' together with blueprint, appears in the record. The ''kid catcher,'' as the term imports, was intended to catch objects which had struck the tripper in a basket or fender, which, like the tripper, extended the full width of the car, and thus keep such objects from getting under the wheels of the car, and when properly operating it accomplished that purpose.

The tripper was in front of the car, and, in position, rested about four inches above the tracks. Its purpose was to release the fender, or basket, which ordinarily swung underneath the car, and several inches above the tracks, but when released dropped by the force of gravity and dragged along the roadbed and tracks.

Mr. Kiefarber, an employee of the defendant company, said that, when properly operating, any object that falls on the track in front of the tripper of the ''kid catcher'' will cause the fender to fall, even an object as light as a small cat.

The testimony of Chester Brady, Mrs. Moerch,

and Mrs. Vickers is that when the car stopped after the plaintiff had been struck, the basket of the "kid catcher" was over her body. It is but logical to say, inasmuch as her body was found under the basket and not in it, an inference of fact arises that the device did not operate properly.

In our judgment the facts in this case properly enjoined upon the trial court the obligation of charging *res ipsa loquitur*. The proof comes within the accepted definition of the doctrine as enunciated by our Supreme Court.

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." Shearman & Redfield on Negligence (6th Ed.), paragraph 59. And see, also, another citation from the same authority to which reference is not commonly made, also from paragraph 59: "Where it is shown that the accident is such that its real cause may be the negligence of the defendant, and that, whether it is so or not, is within the knowledge of the defendant, the plaintiff may give the required evidence of negligence, without himself explaining the real cause of the accident, by proving the circumstances, and thus raising a presumption [better inference under the case of *Glowacki* v. *Northwestern Ohio Ry. & Power Co.,* 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486] that, if the defendant does not choose to give the explanation, the real cause was negligence on the part of the defendant."

As well stated, quoting from *Sweeney* v. *Erving,* 228 U. S., 233, at page 240, 33 S. Ct., 416, 418 (57 L. Ed., 815): "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, *not that they compel such an inference;* that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, *not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it;* that they make a case to be decided by the jury, not that they forestall the verdict." (Italics ours.)

The defendant company had the benefit, by way of explanation to the jury, of the claim that either the body of the plaintiff was hurled by the Brady automobile between the tripper and the fender of the street car, or that the fender, although not operating as usual, did fall and did prevent injury to plaintiff.

Counsel for the defendant quote from the opinion in the *Glowacki case, supra,* at page 464 of 116 Ohio State (157 N. E., 21), and urge that in the instant case it is impossible to ascertain to what extent Mrs. Lombard was injured in her person by being struck by Brady's automobile, or to what extent, if any, she was injured by coming in contact with the street car, and insist that the facts in this case do not justify the application of the *res ipsa* doctrine.

The portion of the *Glowacki case* quoted lends color to the claim of defendant company. It is found on page 464 (157 N. E., 25) and is as follows, the numbering being ours:

"The rule established by those authorities is well

stated in Shearman & Redfield on Negligence (6th Ed.), Section 58b, as follows: "[1] The causative force of the injury must be shown to be controlled by the defendant; [2] it must also appear that there was no *other equally efficient proximate cause;* [3] if from the nature of the event causing the injury an inquiry naturally arises which one of two or more persons, acting independently, is responsible; or, *if it appear that the injury was proximately caused by the independent acts of two or more persons, the application of the maxim is excluded by its terms.*"

The Supreme Court in its majority opinion in the *Glowacki case* held that *res ipsa loquitur* was the proper subject for a charge.

The above quotation was also used in *Loomis* v. *Toledo Rys. & Light Co.,* 107 Ohio St., 161, 140 N. E., 639, where it is said that the trial court was in error in determining that the doctrine should be charged.

We believe that the application by the trial judge of the principle under consideration in the instant case did no violence to the rule, as stated in the quoted portion of the *Glowacki* opinion, when considered in the light of its origin.

It appears from the specific findings of the jury, in the answer to the interrogatories submitted, that whatever result attended the faulty operation of the "kid catcher" was proximately caused by the defendant company. Nor from the nature of the happening did there arise an inquiry which one of two persons acting independently is responsible, as related to any result of the faulty operation of the "kid catcher."

True, the injuries to plaintiff were caused, ac-

cording to the jury, by the joint negligence of defendant company and Brady, but their acts of negligence were well defined in the testimony, and the relation that each bore to them could easily be separated. The fact that the jury could not apportion the extent of the injuries which each tort-feasor inflicted on plaintiff does not relieve the defendant company.

The first proposition of the syllabus in *Hocking Valley Ry. Co.* v. *Helber, Admr.*, 91 Ohio St., 231, 110 N. E., 481, reads as follows: ''Where two causes combine to produce an injury to an occupant of a vehicle passing over a bridge in a public road, both of which are in their nature proximate, the one being a culpable defect in the bridge and the other an occurrence as to which neither party was at fault, those whose duty it was to maintain the bridge in a reasonably safe condition will be liable to the injured person.''

Of course, in the instant case, Brady was at fault, but that difference in fact would not change the application of the law just cited.

In *Gardner* v. *Friederich*, 25 App. Div., 521, 49 N. Y. S., 1077, the syllabus reads: ''If the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both; and this rule obtains, although it may be difficult to determine in what proportion each of the wrongdoers contributed to the injury.''

The court there cites Thompson on Negligence, 1088; Wharton on Negligence (2d Ed.), section 144, and quotes from *Slater* v. *Mersereau*, 64 N. Y., 138, where the court remarked: ''It is true, the defend-

ant and Moore & Bryant were not jointly interested in reference to the separate acts which produced the damages. Although they acted independently of each other, they did act at the same time in causing the damages, each contributing towards it, and although the act of each, alone and of itself, might not have caused the entire injury, under the circumstances presented, there is no good reason why each should not be liable for the damages caused by the different acts of all.''

In the case of *City of Louisville* v. *Hart's Admr.*, 143 Ky., 171, 136 S. W., 212, 35 L. R. A. (N. S.), 207, it was held that both causes may be treated as proximate, and each wrongdoer liable, when a traveler is thrown from his carriage, by a defect in the street, in front of an approaching street car and killed by its being operated at an unlawful and dangerous speed, so that it could not be stopped before running over him.

We have been interested in tracing the source of authority for the quotations given in *Loomis* v. *Toledo Rys. & Light Co.* and in *Glowacki* v. *Railway & Power Co., supra,* from Shearman & Redfield on Negligence, and find reference to page 871, of volume 8 (Camp and Crowe), Encyclopedia of Evidence, and Street (T. A.), Foundations of Legal Liability, volume 1, page 108.

The Encyclopedia of Evidence, at the section cited, in separating the elements constituting *res ipsa,* under the second heading thereof, which is that part included in (2) of the quoted part of the *Glowacki case,* says (page 874): (2) ''There must be no other equally proximate, apparent cause of the accident besides that for which defendant is responsible.''

And the case to which reference is made to support the text is that of *Pieschel* v. *Miner,* 30 Misc. Rep., 301, 63 N. Y. S., 508. This was an action against one Miner. The plaintiff, Pieschel, while in an orchestra in the theater of defendant, was injured by the fall of an iron hook from above the stage. The plaintiff showed that the hook fell while in use by the stage carpenter. There was no evidence of the character of any defect which existed prior to the accident, or that the tool was unsuited to the work.

The court says: "It does not appear that the use of such a fire hook in good condition was careless; and so, *as a defect probably existed, negligence depends upon whether the defect was discoverable upon inspection or not. The case is bare of evidence upon this point.* The dismissal was, therefore, right."

The court, after saying that the right of plaintiff to recover *rested upon another principle of liability,* discusses the question with which we are concerned, in this language: "The point that, if a presumption of negligence arises from the circumstances of a case as presented by a plaintiff, the defendant must *show care,* is not well taken. To *meet the presumption,* it is sufficient to show circumstances inconsistent with its existence, though they be insufficient to prove care. As illustrative, a plaintiff's *prima facie case* made by a presumption of death, due to an absence of seven years, *may be met by evidence of presence within the seven years,* though there be no showing of life. *The presumption of negligence,* if it exists, arises, among other things, *from an absence of explanation by defendant;* but, so soon as

an explanation is made, and shows a situation wherein the accident may have happened from a variety of causes, any of which is equally probable, and some of which may be due to defendant's default, while others are due to influences for which he is not responsible, the accident *is not to be presumed to fix the defendant with liability.*"

The gist of the *obiter* in this case, as we interpret it, relates to the state of proof required to fix ultimate liability against a defendant. It seems to concede that the defendant is put on proof to meet the inference when it arises from the case *as made by the plaintiff*, but that he may show in that proof that there is doubt what proximately caused the injury. This is not a denial, but an application, of the doctrine.

*Chicago City Ry. Co.* v. *Rood,* 163 Ill., 477, 45 N. E., 238, 54 Am. St. Rep., 478; *Yerkes* v. *Sabin,* 97 Ind., 141, 49 Am. Rep., 434, and *Case* v. *Chicago, R. I. & P. Ry. Co.,* 64 Iowa, 762, 21 N. W., 30, are also cited in the Encyclopedia of Evidence to sustain the text; but a careful reading of all of them fails to elicit anything of value on the subject.

Further quoting from Encyclopedia of Evidence at the section to which reference is made in Shearman & Redfield, which relates to (3) of the quotation here under consideration: "So, where the acts or omissions of two or more independent persons are apparently *equally immediate* causes of an injury the negligence of neither of such persons can be presumed," citing *United Electric Light & Power Co.* v. *State,* 100 Md., 634, 60 A., 248, and *Raney* v. *Lachance,* 96 Mo. App., 479, 70 S. W., 376.

*United Electric Light & Power Co.* v. *State* was

an action for damages for the death of a pedestrian caused by coming in contact with a live wire, where it appeared that a wire of a telephone company, which was a party defendant below, but not in the upper court, fell to the ground and caused a defectively insulated wire of defendant electric light and power company, and thereby became heavily charged. The negligence claimed was in permitting the wires to become and remain in a dangerous condition. The court held that the fact of the casualty did not raise a presumption against the defendant light and power company. No discussion of the principle under consideration is indulged, but it is evident that the opinion sustains the text. It will be observed that the physical conditions surrounding the casualty, which *plaintiff of necessity brought into the case* as a part of his proof, raise an uncertainty as to the inference that defendant company alone was responsible for the dangerous instrumentality.

In *Raney* v. *Lachance, supra,* the facts were that two painters, one of whom, Lachance, was sued for damages, while raising an outrigger with ropes along the side and above a house, permitted one end of the outrigger to strike and break a plate glass window. Nothing in the evidence showed whether the breaking was caused by the negligence of Lachance, the other workman, or by the two concurrently. Held that the negligence of Lachance could not be presumed.

It will be noted in the two cases just considered, that the uncertainty incident to any inference that might be indulged against the parties upon whom it was sought to fix liability manifestly prevented the application of *res ipsa.*

The other authority cited in Shearman & Redfield on Negligence, 1 Street (T. A.), Foundations of Legal Liability, 108, consists in a discussion of the necessity that the object which causes the injury shall be in the exclusive control of the party against whom the doctrine is to be invoked, and the cases to which reference is made turn on the inability to determine from the circumstances in evidence who had control of the instrumentality. *Kendall* v. *City of Boston,* 118 Mass., 234, 19 Am. Rep., 446; *Welfare* v. *London & Brighton Ry. Co.,* L. R., 4 Q. B. (1868-1869), 693.

The facts and decisions in the foregoing cases have been considered somewhat at length to show, as they do, that in some instances they do not sustain the text wherein they are cited; that it is easy to misinterpret the law of the particular case when carried into a general principle; and, finally and especially, to disclose that they in no instance interfere with the application of the *res ipsa* doctrine to the instant case.

We believe we have considered all of the propositions urged by counsel for defendant company. No prejudicial error appearing in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

KUNKLE, P. J., and ALLREAD, J., concur.