**RICHTER v WHEELING & LAKE ERIE RAILWAY CO**

Ohio Appeals, 9th Dist, Lorain Co

No 619. Decided Oct 27, 1932

Stevens & Stevens, Elyria, and Cyril J. Maple, Elyria, for plaintiff in error.

H. C. Johnson, Elyria, for defendant in error.

WASHBURN, J.

It is conceded that, giving full credence to the opening statement of counsel for the plaintiff, no question of contributory negligence was presented, but it is insisted that the trial court was wrong in determining that the opening statement of counsel for the plaintiff, together with the admissions made in the pleadings, did not, as a matter of law, state facts sufficient to constitute any negligence on the part of the defendant that was the proximate cause of plaintiff's injuries.

Upon the motion made by the defendant, the trial court was required to take into consideration the admissions made in the pleadings and to assume the absolute truthfulness of all facts stated in the opening statement of counsel, and in addition thereto the court was required to give to the plaintiff the benefit of any reasonable inferences in his favor which were warranted by the facts as stated; and in testing the correctness of the ruling of the Common Pleas Court, we are required to apply the same rules and principles to the opening statement of counsel for plaintiff.

From that opening statement, taken in connection with the admissions in the pleadings, we find that the plaintiff claims that this accident occurred at a crossing known as Huff's crossing, located about 3 miles west of Wellington, the highway being known as route No. 18 and running in an easterly and westerly direction; that east of said crossing the railroad runs in a substantially east and west direction and some distance south from the highway, and that as it approaches said crossing, said railroad curves to the northward and crosses said highway in a general northwesterly and southeasterly direction, and that some distance north of said crossing, said railroad curves westward, and that the train which was run into was headed northwesterly and that the engine was quite a distance northwesterly from said crossing, and that on the side of the highway towards said engine there were trees and various shrubs and bushes, so that the engine part of the train was not visible to one approaching on the highway from the west, going east, until one was very close to the railroad, and that the caboose was a long distance southeasterly from said crossing and easterly of said curve, so that the lights of the caboose were not visible to one approaching said crossing from the west.

That there was a slight berm on each side of the paved portion of said road, some two or three feet of loose slag or stone level with the pavement, and that the ground on either side of the improved portion of the road was lower than the pavement.

That there was a highway fence consisting of square posts with plank railing along it and cable on top, extending on each side of the improved part of the highway and along the berm for a distance of some 275 feet westward from said crossing, which fence was brightly painted—the upper part of the planks and upper part of the posts being white, and the bottom part of the posts being black or a dark color.

Counsel for plaintiff further stated that there were no markings on the pavement indicating the presence of a railroad, and no sign a reasonable distance west of said crossing to apprise travelers upon the highway of the existence of said railroad, and that the only sign indicating the presence

of a railroad on the westerly side of said railroad was a regular railroad sign located about 10 feet from the railroad tracks and down some 8 or 10 feet off the southerly edge of the pavement, which pavement was about 15 feet in width, and that the painting and lettering on said sign were practically faded out and indistinct in appearance, and that the servants of the defendant in charge of said train gave no warning or signal whatever of the presence of said train on said crossing, and that the defendant did not provide "adequate warning of the presence of this railroad crossing at all, let alone of the train."

That approaching said crossing on the highway from the west, there was a slight curve some distance westerly from said crossing, and that from a point about 400 feet westerly from said crossing the road dipped down into a depression, which was some 8 feet deep before the crossing was reached, and from a point about 60 feet west of the crossing, the road grades sharply upward and reaches an elevation on a level with the crossing at a point quite close to the tracks.

That the accident occurred at about 4 o'clock in the morning on a dark, damp night, and that in said depression there was a slight mist or fog; that the automobile in which plaintiff was riding was equipped with 32-candle-power standard grade headlights, which were in good order and lighted; that plaintiff and the driver of the car were residents of West Virginia and were not familiar with the conditions in the vicinity of said railroad crossing and did not know that there were any railroads along said highway; that the night was very dark and so cool that the windows of the car were up; that the car approached said crossing from the west and was proceeding at the rate of about 35 miles per hour, and that the conditions were such that said train standing upon said crossing was not made visible by the lights of said car until the car was very close to the train, and that the plaintiff and the driver were keeping a sharp lookout and did not see said train until too close to the same to avoid hitting it.

It is not claimed that the defendant in permitting its train to stand on said crossing in any way violated the law, neither is it claimed that it failed to perform any specific statutory requirement as to apprising the traveling public of the existence of a railroad crossing at that point.

The fact that the defendant complied with all the laws making specific requirements in reference to its duty as to crossings, would not exonerate it from the charge of negligence if the circumstances were such that common prudence and proper regard for the safety of travelers at such crossing would require other precautions, and in this case it is claimed that the lack of more signs or markings indicating the presence of the crossing, and the location of the sign that was there, together with the fact that the dip in the highway and consequent rising approach interfered with a traveler seeing the train by the aid of his automobile lights, and all of the surroundings as detailed, created a condition from which the servants of the defendant in charge of the train, in the exercise of ordinary care, should have anticipated that such an accident as happened, or a similar accident, might happen, and that a jury might well find that, under the peculiar circumstances existing at this crossing, it was the duty of the defendant, in the exercise of ordinary care, if it stopped its train on said crossing, to give to the traveler on the highway some additional warning of the presence of the railroad crossing, or that there was a train standing thereon, and that therefore the issue as to the negligence of the defendant presented a question to be determined by a jury and not by the court as a matter of law.

We do not have presented a case where the presence of a railroad crossing and of standing cars thereon were perfectly obvious. There are many such cases where the courts have held, as a matter of law, that it was not negligence on the part of the railroad company to allow railroad cars to stand across a public highway.

The question here is as to whether the facts stated present a situation from which reasonable men might reach the conclusion that the servants of the defendant, in the exercise of ordinary care, should have known that, on account of the darkness and the peculiar circumstances surrounding this crossing, the train upon the crossing constituted such an obstruction upon the highway that a person traveling upon the highway, approaching the crossing from the west, at a reasonable rate of speed, in an automobile properly equipped with lights, and carefully operated, would be liable to come into collision with the train, and that ordinary care on the part of the servants of the defendant in charge of said train required them to do something more than was done to warn such traveler of such obstruction, in order to avoid the happening of an accident which they should have

anticipated as likely to occur.

If reasonable men could come to no other conclusion than that, in the exercise of ordinary care, no such duty rested upon said servants, then a question of law, to be determined by the court was presented; but if reasonable men might differ as to the requirements of ordinary care under such circumstances, then a question of fact was presented, which the court was bound to submit to the jury.

We have carefully considered the opening statement of counsel (only the substance of which has been given), in connection with the principles of law we have stated, and taking said statement to be true, we have reached the conclusion that on that as the only evidence in the case, reasonable minds might well differ as to whether the defendant was negligent and as to whether such negligence was the proximate cause of plaintiff's injury, and that therefore the trial court committed error in taking the case from the jury and directing a verdict for the defendant.

Judgment reversed and cause remanded.

PARDEE, PJ, and FUNK, J, concur in judgment.