Zimmerman, J.
 

 Should the appellee be held legally responsible for the death of Leah Catherine Reed, upon the evidence adduced?
 

 •The following material facts are shown by the record:
 

 Route 31 is a state highway, with a concrete surface, running in a general northerly and southerly direction. Some few miles northwest of the city of Marysville, Ohio, in the open country, it is intersected at an angle by a single track of the Erie Railroad, running in a general easterly and westerly direction.
 

 On the night of February 27, 1935, at about ten o’clock, four persons, two young men and two high school girls, one of whom was appellant’s decedent, were proceeding north from Marysville over State Route No. 31 in an automobile of the type known as a coupe, all occupying the same seat. One of the young men was driving and they were traveling at an estimated speed of from 30 to 35 miles per hour. It was a dark night but the lights on the automobile were burning brightly and the conveyance was in good mechanical condition.
 

 According to the photographs, attached to the bill of exceptions as exhibits, the highway dips slightly to the south of the crossing, but is practically level for a considerable space just before reaching it. When the vehicle was on this level stretch, its occupants noticed a moving train. Brakes were applied, but the automobile struck the
 
 forty-second car bach of the locomotive,
 
 resulting in the deaths of Miss Reed and the driver.
 

 It appears that appellee had erected a wooden cross-arm sign of the usual type' on the west side of the highway to the north of the railroad track, which was
 
 *34
 
 not visible to travelers on tbe road coming from the south when a train was occupying the crossing. However, the Highway Department of the state of Ohio had denoted the existence of the track by painting two broad white stripes across the entire width of the highway, to the south of the crossing, between which stripes were the painted letters “it. R.” Nearby, on the east side of the road, was the familiar metal disc with its black cross and bearing the letters “R. R.,’-’ around which reflector buttons had been placed, outlining the letters.
 

 The record suggests that all four of the young people involved resided in the general neighborhood and had previously passed the scene of their/misadventure, more or less frequently, by automobile or bus.
 

 There is nothing to indicate that the crossing in issue presented any features of unusual danger on the night of February 27, 1935. The impression is given of an ordinary country crossing, with an unobstructed view of appellee’s track to the east and west. Under such circumstances, the appellee was not obliged to provide other means of warning than those prescribed by lawful authority. No legal duty rested on it to carry lights or reflectors on its cars, or to maintain lights, watchmen or gates at the crossing for the protection of travelers using the highway.
 

 Appellant relies on Section 8852, General Code, reading as follows:
 

 “At all points where its road crosses a public road, at a common grade, each company shall erect a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive. A company which neglects or refuses to comply with this provision shall be liable in damages for all injuries which occur to persons or property from such neglect or refusal.”
 

 
 *35
 
 It is conceded that appellee had erected a sign, as required by the statute, directly to the north of the crossing; but it is contended by appellant that the statute impliedly demands the erection of two .signs, one on each side of the crossing, to effectuate the stated purpose.
 

 When the language of this enactment is carefully considered such interpretation is at least questionable. “A sign” — not “two signs” — is the term employed. It must be such a sign as will be visible from both sides of the crossing “to'give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive.” But when the train has arrived and is in occupation of the crossing, it affords an effective danger signal to approaching travelers.
 

 Diligent search has not revealed any decision by this court presenting a combination of facts resembling those in the instant case. However, courts in other jurisdictions .have been confronted with similar problems and in most instances have held that where a railroad train is rightfully occupying its track at a highway intersection, the presence of the train is adequate notice to a traveler that the crossing is preempted. Consequently, no additional signs, signals of warnings are required of the railroad company, and negligence cannot be imputed to it by reason of their absence.
 
 Dolan
 
 v.
 
 Bremmer,
 
 220 Iowa, 1143, 263 N. W., 798, is a case in point supporting this proposition, wherein a number of the leading cases dealing with the question are cited and discussed. Compare,
 
 Coleman
 
 v.
 
 Chicago, B. & Q. Rd. Co.,
 
 287 Ill. App., 483, 5 N. E. (2d), 103;
 
 New York Central Rd. Co.
 
 v.
 
 Casey
 
 (Ind. Sup.), 14 N. E. (2d), 714, 716;
 
 Bowers
 
 v.
 
 Great Northern Ry. Co.,
 
 65 N. D., 384, 259 N. W., 99, 99 A. L. R., 1443, and annotation beginning at page 1454.
 

 In our opinion, the record discloses no evidence upon which the appellee can be charged with actionable neg
 
 *36
 
 ligence. It was not guilty of any act or omission which can be denoted as a proximate cause of the death of appellant’s decedent.
 

 Having reached this conclusion, it becomes unnecessary to discuss the subject of negligence in relation to appellant’s decedent or the driver of the automobile.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Day, Williams, Myers and Gorman, JJ., concur.