## LACEY v. NEW YORK CENTRAL RD. CO.

Common Pleas Court, Montgomery County.

No. 99120.   Decided November 9, 1948.

Jake Deutsch, Dayton, for plaintiff.
Routzohn, Routzohn & Nevin, Dayton, for defendant.

**OPINION**

By CECIL, J.

This case is pending before the court upon a motion of the defendant to require the plaintiff to amend her petition by striking certain allegations therefrom. This motion was previously before this court and sustained in its entirety, without a written decision. At the request of counsel for the plaintiff and upon a memorandum submitted by him, we are reconsidering subdivision four of the motion. By this part of the motion, the defendant seeks to require the plaintiff to strike from her petition the following language:

"That the defendant corporation carelessly and negligently failed to maintain said railroad crossing in a safe manner, and in truth and fact said corporation knew and has reason to believe said crossing as it existed prior to said accident on March 7th, 1948 on or about 2:00 A. M. was being maintained in a dangerous and unsafe condition in the following respects, to wit:

"A. Said corporation did not maintain .a flasher or light system at said crossing.

"B. Failed to maintain a watchman and to maintain gates at said crossing.

"C. The bell set up or established as a warning signal at said crossing is inadequate in that said bell cannot be heard by approaching motorists.

"D. That no signs were established to warn motorists, of the existence of said railroad crossing, driving in the night season."

The only statutory provision for a warning sign at a railroad crossing is §8852 GC which requires that the railroad company shall erect a sign "with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive." **Sec. 588 GC** provides that the Public Utilities Commission may require additional safeguards at a railroad crossing if, in its opinion, such safeguards are required to insure public safety. There is no allegation in this petition that any order had been made by the Public Utilities Commission for additional safeguards.

We are of the opinion that our conclusion, in the first instance in sustaining this branch of the motion, was correct

for the reason that the petition contains no allegation that this crossing was an exceptionally dangerous one and no facts were alleged which would show that it was exceptionally dangerous. All of the cases in Ohio and elsewhere, where the question of additional safeguards may be submitted to a jury for its consideration, are based upon the question of an exceptionally dangerous crossing. The cases use such phrases as "unusual danger," "exceptionally dangerous," "more than ordinarily hazardous," "unusually dangerous," "more than ordinarily dangerous," "peculiarly hazardous" and "especially dangerous."

Since a jury can only consider the question of additional safeguards when a crossing is "more than ordinarily hazardous," such question of danger or hazard is an issue in the case and must be pleaded. Not only must the pleading contain the allegation of "peculiarly hazardous," but the facts which make it so must be pleaded.

In the case of **Railroad Company v. Kistler, 66 Oh St 326, at page 334, 64 N. E. 130, 132,** the court said: "It has sometimes been held, and correctly, that a high rate of speed, when taken in connection with other facts and surrounding circumstances, may become an element or factor in constituting negligence, but when such is the case the facts constituting such surrounding circumstances should be pleaded, so that the court can judge from the pleadings whether the high rate of speed is a proper factor in constituting negligence, because a high rate of speed alone cannot constitute negligence as a matter of law."

Counsel for plaintiff cites the case of the **Dayton & Troy Electric Railroad Company v. Bradford et al., 19 Oh Ap 266,** as authority for the proposition that it is not necessary to allege the dangerous condition of the highway as a precedent to alleging negligence based upon the failure to have additional safeguards at the crossing. In this case there was an allegation in the petition as follows: "The collision in question was the result of defendant failing and neglecting to have a watchman at said crossing to warn persons of approach of said cars, and in failing and neglecting to provide other suitable means of warning users of said crossing of approach of said cars."

On motion of the defendant, the Trial Court refused to strike out this language and the court of Appeals sustained the Trial Court in this refusal. The Court of Appeals said **19 Oh Ap at page 269:** "We do not wish to be understood as holding that as to all crossings the question of whether a watch-

man should be maintained can be submitted to a jury, but we think in cases of more than ordinary hazard such questions can be properly submitted to a jury."

The Court of Appeals here considered only the question of whether or not the facts, as proven, were sufficient to warrant the jury in considering that the crossing was one of more than "ordinary hazard." It did not discuss the question of pleading this issue. We think the Court of Appeals did not decide this issue. At any rate, in so far as it is in conflict with the Supreme Court of Ohio, it does not state the law.

There is another question involved in this pleading which, while not necessary to be decided for the purpose of this motion, would be immediately raised upon the filing of an amended petition and is certain to be raised at the time of the trial. That is, what sort of circumstances may be taken into consideration in determining whether or not a crossing is one to be considered "more than ordinarily dangerous"? In this connection may the jury take into consideration all the surrounding circumstances, physical and otherwise of the crossing, or may it consider only those surrounding conditions which are caused by the railroad company itself?

The case of **Cleveland C. C. & I. Railroad Company v. Schneider, 45 Oh St 678, 17 N. E. 321,** is the leading case in Ohio upon this question. **45 Oh St at page 694, 17 N. E. 326,** the court quoted from the opinion in Pennsylvania Railroad Company v. Matthews, 36 N. J. L. 531 as follows: "Under usual circumstances, in the open country, they (railway-companies) can run as many trains, and at as great rate of speed, as are consistent with the safety of their passengers. They are not called on to keep flagmen, under ordinary circumstances, at cross-roads, nor give any other notice of the approach of their trains than those signals that are prescribed by statute. If greater safeguards are requisite for the safety of the community, and those public agents are to be put under greater restrictions in the exercise of their franchises, such contrivances must proceed from the legislative and not from the judicial power. But, while I thus say that these additional burdens cannot be imposed by the courts upon these companies, I also say, at the same time, and with quite as much emphasis, that the companies may by their own conduct impose such burdens on themselves. If one of them chose to build its tracks in such a mode as to unnecessarily make the use of a public road which it crosses greatly dangerous, 1 think such company, by its own action, must be held to have assumed the obligation of compensating the public

for the increased danger by the use of additional safeguards. The reasonable and indispensable implication is that the railway is to be constructed so as not unnecessarily to interfere with the safe use of the public roads; and if a railroad for its own convenience, curves its track, as it leaves a deep cut within a few feet of a highway, and also sees fit to put up buildings close along such track, and by these means, or either of them, heightening the danger in the use of such highway, it seems to me very clear that such company must be held to have taken upon itself the duty of averting such danger by the employment of every reasonable precaution within its power. On such occasions as this, or whenever the situation is embraced within the principle stated, the presence of a flag-man, or some equivalent safeguard, can be demanded of the company."

The court then said, with reference to the case before it, **45 Oh St at page 695,** 17 N. E. at page 326: "The crossing in question has been recognized by the railroad companies using it as of that exceptionally dangerous character, made so for their convenience in using the tracks as a place for switching cars and locomotives, which created the duty to place gates and gatemen there as a necessary precaution on their part, and we think very properly so; for when a railroad company, for its own convenience, lays its tracks across a generally travelled public street in a populous town or city, over which people, with their teams and vehicles, are accustomed to pass almost continuously, and then uses the tracks as a place for the convenient switching of trains and engines, thus making a yard of a portion of the public street, it is bound to exercise care, proportioned to the increased danger arising from such use of its tracks, to avoid injury to persons using the crossing; and common prudence requires that it should, as a reasonable precaution for their safety, and means of preserving the legitimate uses of the street, maintain flagmen, or gates and gate-men, at such crossing, or adopt other adequate measures for that purpose; otherwise the street may be permanently obstructed, and its uses destroyed."

The first syllabus of this case, which states the law upon this subject, is as follows: "Where a railroad company uses the tracks of its road across a generally traveled public street in a populous town or city, for its convenience in the switching of trains, cars, and locomotives, and the crossing is thereby rendered exceptionally dangerous, it is bound to exercise care proportioned to the increased danger arising from such use of its tracks, to avoid injury to persons using the crossing, and should, in the exercise of such care, as a reasonable pre-

caution for their safety, and means of preserving the legitimate uses of the street, maintain flag-men, or gates and gatemen, at such crossing, or adopt other equally adequate measures for that purpose."

In the Kistler case, supra, the seventh syllabus reads as follows: "As a railroad company had no control over the trees, weeds, brush, shrubbery and the like, not on its right of way, it is not required to take such things into consideration when approaching a crossing."

In this connection, the court said, **66 Oh St on page 342,** 64 N. E. at page 134: "The court also charged the jury that if trees, shrubbery, or weeds presented an obstruction to view, it required care and caution on part of plaintiff and defendant according to their respective rights as explained by the court. The inclusion of the defendant in this charge was error. The trees, shrubbery, and weeds outside of the right of way, imposed no care or caution upon the company in running its train."

We are of the opinion that this case supports the fact that the railroad company is not responsible for anything except what it places on the right of way, and the condition that it creates by the use of its trains. See also, **Jollay, Admr. v. Pennsylvania Railroad Company, Oh Ap,** 38 N. E. 2d 204.

The case of **Weaver v. Columbus-Shawnee & Hocking Railroad Company, 76 Oh St 164,** 81 N. E. 180, follows the rule laid down in the Schneider case, supra.

The charges of negligence, in this case, were the construction and maintenance by the railroad of a building so situated with respect to its road and highway on which the plaintiff was approaching that it interrupted, in connection with other buildings, a view of the approaching train. The court said, **76 Oh St at page 176,** 81 N. E. at page 182: "These signals (bell and whistle) are required at grade crossings in the open country, and the elementary rule that the degree of care to be exercised is determined by the danger to be apprehended should require additional precaution when the crossing is in a denser population, and when structures maintained near the track obscure the view of approaching trains."

The court then continues: "This view of the subject was taken by this court in **Railway Co. v. Schneider, 45 Oh St 678,** 17 N. E. 321. The rule upon the subject has been correctly stated to be that: 'Where the surroundings are such as to render a crossing particularly dangerous, it is the duty of the company to exercise care commensurate with the danger, and especially, if the company has created unusual danger

at or near a crossing, it must meet such peril with additional precautions.' "

The case of Grand Trunk Railroad Company v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, is a leading case upon the subject under consideration. This case is cited upon the proposition that the railroad company must take into consideration all of the surrounding circumstances at a crossing in determining whether or not·it is unusually hazardous, and that it is not limited in that consideration only to the things that the railroad company, itself, does to the crossing.

The court says, 144 U. S. on page 421, 12 S. Ct. at page 684, 36 L. Ed. 485: "It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flag-man or gates at a crossinig, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed either by the company itself, or by other objects proper in themselves; or that the crossing is a much travelled one, and the noise of approaching trains is rendered indistinct, and the ordinary signals difficult to be heard, by reason of bustle and confusion incident to railway or other business; or by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country."

It must be noted that this case was decided on the law as it existed in Michigan. The court says, 144 U. S. on page 422, 12 S. Ct. at page 684, 36 L. Ed. 485: "If the construction of this statute by the Michigan courts be as claimed by the defendant, of course this court would feel constrained to adopt the same construction, even if we thought it in conflict with fundamental principles of the law of negligence to which we have referred in a preceding part of this opinion, obtaining in other states. * * * But do the Michigan cases cited sustain the defendant's contention? We think not; but rather that they support the rule laid down by the court below in the charge excepted to."

It is our opinion that in Ohio before a question of additional precautions can be submitted to a jury, there must be evidence that the crossing is an unusually hazardous one and that it is made so by the railroad company's use of it. If this is the law in Ohio, then the rule announced by the Supreme Court of the United States, in the case of Grand Trunk v. Ives, supra, is not applicable.

In the case of Lehigh Valley Railroad Company v. Ciechowski, 2 Cir., 10 F. 2d 82, the court holds that the question of additional precautions may be submitted to the jury for its determination. In this case, however, the plaintiff was a passenger on the train and the railroad company was held to the highest degree of care. This distinguishes this case from the one at bar.

The case of Evans v. Erie Railroad Company, 6 Cir., 213 F. 129, has been cited by counsel for the plaintiff. The court, in this case, quotes the rule laid down by the Supreme Court in the Ives case, supra. The particular question we are concerned with here was not decided by the court, but it is indicated that they would probably follow the Ives case. The court says, 213 F. at page 135: "As there must be a new trial, on which the testimony may be more complete than in the record before us, we do not determine whether there was sufficient evidence of an unusually dangerous crossing to justify submitting the question to the jury, adding, however, that, in our opinion, evidence of what we understand to be alleged by plaintiff as a practice of running Erie passenger trains at high speed over this crossing on a downgrade is proper to be taken into account, in connection with other conditions (including the number of tracks, the grade, the amount and kinds of highway travel and railroad traffic, and prior accidents and near accidents so far as shown to have resulted from the nature of the crossing), in determining the presence or absence of an unusually dangerous crossing."

It is our opinion that the Federal Court would be bound to follow the Ohio rule. At any rate, as between the Federal Court and the Ohio Supreme Court, the rule laid down by the Ohio Supreme Court would be the precedent which this court would be required to follow.

In the case of Cleveland, Chicago, Cincinnati & St. Louis Railroad Co. v. Richardson, 10 O. C. D. 326, it would appear that the court holds that the question of additional precautions, at a railroad crossing, is a question to be determined by the jury.

It is interesting to note, however, that the acts of negligence of which the plaintiff complains involve the use of the railroad tracks. If this court intended to go to the extent indicated by the fifth syllabus, then it is not in harmony with the decisions of the Supreme Court of Ohio.

In a recent case, the Supreme Court said: "The law does not require railroad companies to place signals, gates or flashers at highway crossings unless ordered by the Public

Utilities Commission, or unless such crossings are especially dangerous or there exist special circumstances which render such precautions necessary for the public . safety." **Woodworth v. New York Central R. Co., 149 Oh St 543, 80 N. E. 2d 142, 146.**

Other cases in Ohio involving the question of additional precautions at railroad crossings, and, particularly dangerous crossings, are: **Capelle v. Baltimore & Ohio R. Co., 136 Oh St 203, 24 N. E. 822; Reed, Adm'r v. Erie R. Co., 134 Oh St 31, 15 N. E. 2d 637; Thomas v. Pennsylvania Railroad Company, 70 Oh Ap 191, 45 N. E. 2d 776; Shaffer, Adm'x v. New York Central Rd. Co., 66 Oh Ap 417, 34 N. E. 2d 792; Haughn v. Detroit, Toledo & Ironton R. Co., 25 Abs 123;** Lake Shore & Michigan Southern R. Co., v. Patrick Gaffney, 6 O.C.D: 94; **Cleveland, C., C. & I. R. Co. v. Louis C. Reiss, 13 Ohio Cir. Ct. R. 405;** Lake Shore & Michigan Southern R. Co. v. A. G. Reynolds, Adm'r, 13 O. C. D. 199; **Akron & Cuyahoga Falls Rapid Transit Co. v. Erie R. Co., 7 Ohio Cir. Ct. R., N. S., 199;** and, **Baltimore & Ohio Southwestern R. Co., v. Amelia Maloney, Adm'x, 7 Ohio Cir. Ct. R., N. S., 437.**

Upon reconsideration of subdivision four of the defendant's motion to strike, we are of the opinion that our original ruling was correct. The motion will be sustained and an entry may be drawn accordingly.