CROKE, APPELLEE, *v.* THE CHESAPEAKE & OHIO RY.
CO. ET AL., APPELLANTS.

484

(No. 4386—Decided December 5, 1949.)

Mr. *George R. Effler*, for appellee.
Messrs. *Shumaker, Loop, Kendrick & Winn* and *Mr. Henry A. Middleton*, for appellants.

Fess, J. This case is here on appeal on questions of law from a judgment rendered on a verdict in favor of plaintiff in the sum of $25,000, for injuries sustained as a result of a collision between the automobile in which plaintiff was riding as a guest and the left side of the front part of a locomotive operated by The Chesapeake & Ohio Railway Company over the tracks of the Toledo Terminal Railroad Company at 10:30 p. m. on May 29, 1947.

Assigned as error is the failure of the trial court to render judgment for the defendants as a matter of law, and ten additional assignments of error occurring at the trial in support of a motion for new trial, which was overruled.

The point of the collision is the intersection of Manhattan boulevard with the crossing of the defendant. Although the crossing is within the Toledo city limits, the surrounding terrain is open country. Manhattan boulevard has a 24-foot pavement and the approach to the crossing is level. Three tracks of the Terminal cross the pavement. Two main tracks run parallel to and approximately 200 feet south of the street for a considerable distance east of the crossing and then, by a wide curve, angle at about 50° over the crossing. The third track is a spur crossover further angling to the east to another railroad. One hundred and thirty-two feet west of the Terminal crossing is a single track of the Shore Line Railroad crossing the highway at right angles. A quarter mile further to the west is the Ann Arbor Railway crossing utilized for passenger as well as freight trains, having several tracks. Another track of the Terminal also crosses the highway west of the Ann Arbor crossing. These crossings to the west are guarded by automatic alternating red flasher signals. Only freight trains occupy the Terminal tracks incident to connections with other railroads in the Toledo area.

At the crossing of the Terminal where the accident occurred, no flasher signs are installed but regulation cross-arm signs are erected, equipped with reflector buttons on the lettering of the signs. These signs also have a round metal disc sign with "3 Tracks" painted thereon. Thirty-five feet west of the crossing, overhanging the center of the street, is a street lamp which lights the crossing. For a considerable distance, a driver approaching the crossing from the west has a clear and unobstructed view of the crossing and of the railway tracks to the south and east.

The automobile in which plaintiff was riding was proceeding east at a speed of from 25 to 30 miles per hour. The train hauling 54 cars was proceeding around the curve in a northwesterly direction at not more than 20 miles per hour. There were four persons in the automobile—the driver and his wife in the front seat, the plaintiff and a Mr. Michaelis, who died as a result of injuries, in the rear seat. When the driver of the car turned onto Manhattan boulevard some distance from the crossing, the plaintiff told him he would have to go slow and watch, because there were a lot of crossings there.

Plaintiff also testified that as they drove along she was listening and looking straight ahead, glancing in both directions; that she heard no engine bell or whistle and saw no engine headlight. In answer to what she first observed as unusual, she said:

"Well, the hit—this object was right in front and we hit it. Great big dark object on the right side."

She also said she did not see the engine "till we hit it."

The driver likewise testified he was looking and listening and heard no engine bell or whistle and saw no headlight. The first thing he saw was a big black object in front of him. The driver's wife, who was pres-

ent in the courthouse during a portion of the trial, did not testify.

Another driver and his boy, in a second car, arriving at the scene a moment after the accident, heard no engine bell or whistle and saw no headlight. The wife of the driver of this second car heard no bell or whistle but when they were two blocks from the crossing saw what appeared to be a headlight of an engine moving westward toward her. None of the occupants of the second car heard the crash of the collision.

The engineer, fireman and brakeman, who were on the engine, testified that the crossing whistle was blown, that the engine bell was rung continuously and that the headlight was bright. The fireman and brakeman were seated on the left side of the locomotive and saw the approaching automobile. They saw the car slow down as if it were going to stop, but then it proceeded ahead at increased speed. When it became apparent the car was not going to stop, each of the men shouted to the engineer, who applied the emergency brakes, but too late, and the car ran into the side of the engine. The locomotive was a mallet type, approximately 100 feet long. The train was stopped with the first box car on the crossing.

A switch tender, who was in his shanty next to and north of the crossing, said he saw the headlight of the engine, heard the bell ringing before and after the collision, and also saw the light of the automobile pass his shanty. He observed the automobile as it traveled for the last 25 feet or so without change of speed, before it struck the engine and rebounded, so it was not dragged along by the moving engine. On cross-examination, he stated he did not hear the engine bell or whistle before the accident. He was not permitted to testify that after the collision he heard one of the members of the crew tell another to turn off the bell on the engine.

In addition to the conflict of the testimony regarding the bell, whistle and locomotive headlight, there is a dispute as to whether after the collision the headlights of the automobile were burning, the automobile radio playing and also whether the left front window of the car was open. These latter disputed items are only material as affecting the credibility of the witnesses.

There is no evidence that the driver of the automobile exercised any care at all for his own safety or that of his passengers. Plaintiff had warned him of the danger; he had been over the crossing before and knew of its location; he did not even have the opportunity of applying his brakes before he struck the locomotive. He simply "saw it and bang," or as plaintiff related, there was a "flash and crash."

Five specifications of negligence were submitted to the jury:

1. Failure to ring the engine bell.

2. Train crew failed to keep a proper lookout for approaching traffic.

3. Headlight either extinguished or so dim as to render it invisible.

4. That defendants, by watchman or other persons, failed to give any warning of the approach of the train.

5. At the close of the evidence, plaintiff was permitted to amend her petition over objection, by alleging that the defendants failed to give any warning by any means or in any manner of the approach of the train to Manhattan boulevard.

Allegations that a crossing watchman had guarded the crossing and that the watchman failed to warn the plaintiff's driver, were withdrawn and the general allegation referred to as No. 5 was inserted by amendment. Allegations regarding obstructions to the view and failure to sound a whistle were also withdrawn.

In answer to interrogatories submitted by the de-

fendants, the jury stated that the defendants were negligent in "failing to sound proper warning signals—namely by bell or whistle. Crossing has improper protection." In answer to interrogatories submitted by plaintiff, the jury found that the plaintiff exercised due care, that the engineer failed to ring the bell continuously as the train approached the crossing and that plaintiff's injury was proximately caused by the failure to ring the engine bell.

It is the contention of plaintiff that inasmuch as the jury found upon credible evidence that the defendant failed to sound the bell and that such failure proximately caused her injuries, any error occurring at the trial with respect to other matters are immaterial under the principle announced in *Sites* v. *Haverstick,* 23 Ohio St., 626; *Columbus Ry., Power & Light Co.* v. *Lombard,* 33 Ohio App., 47, 168 N. E., 619; *Storrs-Schaeffer Co.* v. *Laws,* 13 Ohio App., 387; and *Zimmerman* v. *Second National Bank of Bucyrus,* 24 Ohio App., 48, 156 N. E., 157, and supported by certain expressions in the opinion in *Soltz* v. *Colony Recreation Center,* 151 Ohio St., 503, 87 N. E. (2d), 167; *Elio* v. *Akron Trans. Co.,* 147 Ohio St., 363, 71 N. E. (2d), 707; *Dowd-Feder Co.* v. *Schreyer,* 124 Ohio St., 504, 515, 179 N. E., 511; *Klever* v. *Reid Brothers Express, Inc.,* 151 Ohio St., 467, 86 N. E. (2d), 608; and *Hart* v. *R. M. Ins. Co.,* 152 Ohio St., 185, 87 N. E. (2d), 347.

A review of the authorities reveals that the two-issue rule is commonly only applied where there is a general verdict for the defendant without answers to interrogatories disclosing that the verdict was in fact based upon the issue to which the error related. It has been uniformly restricted to erroneous instructions to the jury, and has not been applied to errors relating to the admission or rejection of evidence. The issues must be complete and independent of each other

and neither of them be an element of or dependant on the .other. If the two issues constitute a primary and a secondary issue, the rule is applied only if the primary issue is properly submitted.

In *Culbertson Co.* v. *Warden,* 123 Ohio St., 297, 175 N. E., 205, the Supreme Court refused to extend the application of the two-issue rule to separate specifications of negligence and held that the rule has no application to specifications of negligence, separately stated and numbered, but which in fact constitute a single negligent act resulting in a single loss and damage. This decision has not been overruled but has been cited with approval. *Acrey* v. *Bauman,* 134 Ohio St., 449, 455, 17 N. E. (2d), 755; *Mass. Bonding & Ins. Co.* v. *Dingle-Clark Co.,* 142 Ohio St., 346, 357, 52 N. E. (2d), 340; *Taylor* v. *City of Cincinnati,* 143 Ohio St., 426, 55 N. E. (2d), 724; *Bush, Admr.,* v. *Harvey Transfer Co.,* 146 Ohio St., 657, 666, 67 N. E. (2d), 851.

The language taken from the opinions in the cases cited by plaintiff is not carried into the syllabi and does not indicate any modification of the definite statement contained in the second paragraph of the syllabus of *Culbertson Co.* v. *Warden, supra.* The two-issue rule, therefore, does not preclude consideration of errors assigned relating to specifications of negligence other than those which may relate to the failure to ring the engine bell.

The finding of the jury that the "crossing has improper protection" is a mere conclusion and of no value. *Mason Tire & Rubber Co.* v. *Lansinger,* 108 Ohio St., 377, 140 N. E., 770. Furthermore, there was no evidence tending to show that this crossing was especially hazardous so as to require the defendants to provide greater safeguards than those provided by statute. To approve the submission to the jury in the instant case of the duty to employ additional safe-

guards would authorize the submission of the question in actions involving all grade crossings in open country over which slow freight movements are made. Before the question of greater precautions can be submitted to a jury, there must be evidence that the crossing is unusually hazardous and that it has been made so by the railroad company's use of it. *Cleveland, C., C. & St. L. Ry. Co.* v. *Schneider,* 45 Ohio St., 678, 17 N. E., 321; *New York, C. & St. L. Rd. Co.* v. *Kistler,* 66 Ohio St., 326, 64 N. E., 130; *Weaver* v. *Columbus, S. & H. Ry. Co.,* 76 Ohio St., 164, 81 N. E., 180; *Reed, Admr.,* v. *Erie Rd. Co.,* 134 Ohio St., 31, 15 N. E. (2d), 822; *Capelle* v. *B. & O. Rd. Co.,* 136 Ohio St., 203, 207, 24 N. E. (2d), 822; *Woodworth, Admx.,* v. *New York Central Rd. Co.,* 149 Ohio St., 543, 551, 80 N. E. (2d), 142; *Lacey* v. *New York Central Rd. Co.,* 85 N. E. (2d), 540.

At the conclusion of the taking of testimony, on motion of defendants, the allegation that defendant failed to maintain a watchman at the crossing was stricken. Over objection, plaintiff was granted leave to amend by interlineation "that the defendants failed to give any warning by any means or manner of the approach of the train." The amendment was improper as a conclusion, but since it introduced the subject of additional precautions without alleging the facts disclosing an unusually dangerous crossing, the granting of the amendment was prejudicially erroneous. *Lacey* v. *New York Central Rd. Co., supra.*

On several occasions during the trial the court, over objection, admitted evidence of flasher signals erected at the Ann Arbor crossing, a quarter of a mile west of the Terminal crossing. The conditions at the two crossings are quite dissimilar. The flasher signals at the Ann Arbor were erected pursuant to order of the Public Utilities Commission. Over this crossing oper-

ate passenger as well as freight trains. Only slow freight trains operate over the Terminal crossing. The admission of this evidence was erroneous. *Jones* v. *Village of Girard,* 111 Ohio St., 258, 144 N. E., 847. Although upon special request of the defendants prior to argument, this evidence was excluded from consideration by the jury, the error was not cured. The jury found the crossing was improperly protected and it is apparent that the admission of this evidence, including that portion of plaintiff's exhibit No. 1 disclosing the Ann Arbor crossing, was prejudicial.

The court also submitted to the jury the allegation that the employees in charge of the train failed to keep a proper lookout for traffic on the highway, including the automobile in which plaintiff was riding. There was no evidence tending to support this allegation. On the contrary, the testimony of the fireman and the head brakeman that they observed the approach of the automobile is uncontradicted. The specification should therefore have been withdrawn from the consideration of the jury, but since the special finding is equivalent to a finding adverse to the allegation, the error is not prejudicial.

By its special finding, the jury eliminated all specifications of negligence except the failure to ring the engine bell. The allegation with respect to the whistle was withdrawn and the matter of protection was improperly submitted and the finding thereon was of no value. The headlight was burning brightly, according to the manifest weight of the evidence. By inference, the jury found that the headlight was neither extinguished nor so dim as to render it invisible. *Masters* v. *New York Central Rd. Co.,* 147 Ohio St., 293, 70 N. E. (2d), 898.

It is undisputed that the terrain between the highway and the railroad was open country with no ob-

struction to the vision of travelers on the highway. It is also undisputed that both plaintiff and the driver of the automobile knew of the presence of the railroad crossings on this highway. She had called his attention to that fact. He had driven over the crossing on previous occasions. The train approached around the bend toward the crossing with its bright headlight burning at a speed less than that of the automobile. The locomotive did not collide with the automobile. The automobile hit the side of the locomotive.

In this situation, the failure to ring the bell, the only act of negligence supported by any evidence found by the jury, could not have been the proximate cause of plaintiff's injuries. The motions for judgment notwithstanding the general verdict should have been granted. *Reed, Admr.,* v. *Erie Rd. Co., supra; Capelle* v. *B. & O. Rd. Co., supra; Woodworth, Admx.,* v. *N. Y. C. Rd. Co., supra.*

The judgment is reversed and final judgment awarded defendants.

*Judgment reversed.*

CONN and CARPENTER, JJ., concur.