Stewart, J.
In case No. 32898 the question presented is whether the Court of Appeals erred when it reversed the judgment of the Court of Common Pleas dismissing the petition of Nettie Jane Canterburv for the reason that she was a minor and had not instituted her action by a next friend.
The trial court refused to permit an amendment of *72 the petition and the substitution of a nest friend as plaintiff. The refusal was based upon Section 11247, General Code, which reads:
“The action of an insane person must be brought by his guardian; and of an infant by his guardian or next friend. When the action is brought by his next friend, the court may dismiss it, if it is not for the benefit of the infant, or substitute the guardian, or any person, as the next friend. ’ ’
In reversing the judgment of the trial court the Court of Appeals relied upon the following statement in 43 Corpus Juris Secundum, 281, Section 108:
“It is not an absolute prerequisite to jurisdiction of an action by an infant that he should sue by guardian ad litem or next friend, and the suit or action is not void on that ground alone; it merely affects the regularity of the proceedings, and the defect is amendable; the judgment or decree is not void. ’ ’
The bringing of an action by a minor in his own name constitutes simply a failure to follow procedural statutes. The minor is the true plaintiff and it is for him that recovery is sought and for his benefit that the action is prosecuted.
It is true that under Section 11247, General Code, an infant, as a procedural matter, must sue by a guardian or next friend, but where an infant sues in his own name and no attack for lack of capacity has been made under Section 11309, General Code, the lack of capacity is deemed waived.
Section 11363, General Code, provides:
“Before or after judgment, in furtherance of justice and on such terms as it deems proper, the court may amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment *73 does not substantially change the claim or defense, by conforming the pleading or proceeding to the facts proved. When an action or proceeding fails to conform to the provisions of this title, the court may permit either to be made conformable thereto, by amendment. ’ ’
In the present case the trial court had power under the foregoing enactment to insert the name of Nettie Jane Canterbury’s husband as her next friend.
In 27 American Jurisprudence, 838, Section 117, it is stated:
“A court is not without jurisdiction to entertain a suit by an infant in his own name, but the bringing of such a suit is merely an irregularity which may be cured by thereafter appointing a next friend to prosecute the action and by amending the pleading accordingly. An objection that an infant sues without a next friend or guardian ad litem, or without a representative duly appointed by the court when appointment by the court is necessary, is a matter of procedure and not of substance, and must be made by plea in abatement or by plea or answer in the nature thereof and is waived by pleading to the merits.”
In our opinion the Court of Appeals properly reversed the judgment of the Court of Common Pleas for its refusal to grant to Nettie Jane Canterbury leave to amend her petition, and the judgment of the Court of'Appeals is affirmed.
In case No. 32899, the question is: Did the Court of Appeals commit error in affirming the judgment of the Court of Common Pleas in favor of James Canterbury?
Motions for a directed verdict and for judgment notwithstanding the verdict presented the question of the right of James Canterbury to have his cause submitted to the jury, and that is the sole question before us since no motion for a new trial was filed.
*74 The trial court submitted the case to the jury upon the question whether there existed special circumstances which rendered the place where the tracks of defendant crossed route 98 peculiarly hazardous.
The law applicable to a situation such as is presented in the present case is expressed as follows in the syllabus of Capelle v. Baltimore & Ohio Rd. Co., 136 Ohio St., 203, 24 N. E. (2d), 822:
“1. Where a railroad train is rightfully occupying its track at a common grade crossing in the open country, the presence of the train is usually adequate notice to an approaching traveler on the highway that the crossing is pre-empted, and no additional signs, signals or warnings, other than those specified by law, are ordinarily required of the railroad company.
“2. In general, a person who drives, or is driven, into the side of a railroad train standing or moving over a grade crossing cannot, in the absence of special circumstances rendering the crossing peculiarly hazardous, recover from the railroad company for injuries received thereby.
“3. Section 7472, General Code, as it relates to the obstruction of highways by railroad trains, is designed to facilitate the movement of traffic and to discourage unnecessary blockade; it is not a safety measure to prevent vehicles from being driven against the sides of trains.
“4. Where a motor vehicle is run into a train which has occupied a crossing for a period of time in excess of the limit prescribed by statute or ordinance, such occupancy is generally to be regarded as a condition only, and not as a cause of the collision.”
The rule pronounced in the Capelle case has not been modified in any subsequent ' decision by this court.
*75 It is stated as a general rule of law in 44 American Jurisprudence, 741, Section 501, as follows:
“In general, in the absence of special statute or ordinance, the presence of a railroad train or cars on a crossing is notice to the driver of a vehicle on the highway of such obstruction; and if there are no unusual circumstances, the railroad company is not chargeable with negligence per se merely because it leaves a train across the highway, without stationing guards, placing lights on the cars, or otherwise giving warning of the presence of the cars across the highway. The leaving of a train across the highway without lights or other signals to disclose its presence cannot be considered as the effective cause, but merely as the condition, of injuries resulting to a traveler who runs into or against the train. In reference to injuries resulting from an automobile colliding with a train standing on a highway crossing at night, the rule is stated that the railroad company and those in charge of its trains have the right to assume, or are justified in assuming, that persons traveling by automobile at night will adopt such lights and drive at such rate of speed as will enable them to see a train of cars across the highway and to bring the automobile to a stop before coming into collision with the cars, and therefore the railroad company is not negligent in failing to give warning of the presence of the train, particularly where there is no obstruction to sight and the train may be plainly seen for a sufficient distance to enable travelers to stop.”
In the case of Reed, Admr., v. Erie Rd. Co., 134 Ohio St., 31, 15 N. E. (2d), 637, the syllabus reads:
“A railroad company is not liable for the death of an automobile passenger occasioned when the automobile is driven against a moving freight train rightfully occupying its track at a highway crossing in the open country, where it appears that the company had *76 erected a sign in literal compliance with Section 8852, General Code, that there were other effective signs denoting the presence of the crossing and that the automobile struck the forty-second car back of the locomotive. ’ ’
In the opinion by Judge Zimmerman there is the following statement:
“There is nothing to indicate that the crossing in issue presented any features of unusual danger on the night of February 27, 1935. The impression is given of an ordinary country crossing, with an unobstructed view of appellee’s track to the east and west. Under such circumstances, the appellee was not obligated to provide other means of warning than those prescribed by lawful authority. No legal duty rested on it to carry lights or reflectors on its cars, or to maintain lights, watchmen or gates at the crossing for the protection of travelers using the highway. ’ ’
In the present case the record shows that the crossing in issue was an ordinary country one with an unobstructed view of defendant’s tracks to the east and west, on which, because of a mechanical failure, a train had been stopped, blocking the highway. As the highway approached the crossing it was straight, the only variation from a perfectly level approach being a slight dip with a gradual rise from a point 150 feet away to the level of the crossing. The automobile in which the plaintiff was riding approached the crossing at 40 miles per hour and the driver apparently disregarded the three warning signs erected along the side of the road, the ear being driven into the side of the standing train.
There is nothing in the record to indicate that the driver’s view was in any way obscured, and, even though his headlights were dimmed, the rise toward the track was so gradual that if he had been exercising any reasonable care his lights could not have failed to disclose the car on the crossing.
*77 Although the Capelle case, supra, qualified the general proposition that a person who drives or is driven into the side of a railroad train standing or moving over a grade crossing cannot recover by the qualification that such driving must be in the absence of special circumstances rendering the crossing peculiarly hazardous, it was not intended to enunciate a rule that a crossing is peculiarly hazardous if it is not perfectly level.
It is true that the negligence of the driver of the automobile cannot be imputed to James Canterbury, the passenger, and the sole question mvolved m the present cáse rests upon whether defendant was negligent.
Under the record in the present case, we are of the opinion that reasonable minds could not differ upon the truth that the driver of the automobile proximately caused the injury to James Canterbury without any actionable negligence upon the part of defendant, and the motions by defendant for a directed verdict should have been granted.
The judgment of the Court of Appeals is reversed and final judgment entered for defendant.

Judgment affirmed in case No. 32898.

Judgment reversed in case No. 32899.

Weygandt, C. J., Zimmerman, Middleton, Matthias and Hart, JJ., concur.
Taft, J., concurs in paragraphs two and three of the syllabus and in the judgment in case No. 328.19.