EASTERWOOD, APPELLEE, *v.* NEW YORK, CHICAGO & ST. LOUIS
RD. CO., APPELLANT.*

(No. 516—Decided January 27, 1958.)

*Appeal settled and dismissed on application of defendant-appellant,
May 21, 1958.

*Mr. Henry G. Stahl,* for appellee.

*Mr. Leo W. Kenny* and *Messrs. Williams, Eversman & Black,* for appellant.

FESS, J.   This is an appeal on questions of law from a judgment entered upon a verdict for plaintiff in the sum of $15,000.

On the night of September 16, 1953, plaintiff was driving east on Napoleon Street in Fremont, Ohio.   Defendant's single track, running from northeast to southwest, intersects Napoleon Street at an angle at grade.   Defendant's engine and tender, engaged in a backing movement southwest pulling two freight cars, and the automobile driven by plaintiff collided at the grade crossing with resultant injury to plaintiff.   A single railway cross-buck sign was located from plaintiff's direction of approach on her left-hand side of the street west, or on the far side of the track.   From a point 75 feet west of the crossing, plaintiff had an unobstructed view to the northeast from which direction the train was approaching the crossing at an obtuse angle and at a speed of from 10 to 15 miles per hour.

Although plaintiff had lived in the area for some years, she testified that she was unaware that she was about to cross a railroad track.   It was a dark night, with no street lights at the intersection.   There is the usual conflict in the evidence with respect to the burning of the headlight on the tender of the engine[1] and the sounding of the bell and whistle for the crossing.

The case was submitted to the jury on four specifications of negligence:

First:   Failure to maintain at the crossing lights or flasher signals, watchmen or gates, should the jury find the crossing unusually hazardous.

Second:   Failure to give a signal by bell, whistle or otherwise, as required by Section 4955.32, Revised Code.

Third:   Failure to maintain a sign or signal on the south side of the crossing as required by Section 4955.33, Revised Code.

---

[1]Failure of the defendant to comply with the provisions of Section 4963.25, Revised Code, with respect to headlight was not alleged.

Fourth: Failure to keep a lookout for vehicles on Napoleon Street.

In response to interrogatories submitted by defendant, the jury found the plaintiff free from contributory negligence and found defendant negligent in the following particular:

"We feel that there was not sufficient warning at the south side of the Napoleon Street crossing west of the Nickel Plate tracks."

In general, cases involving the question whether compliance by a railroad with statutory requirements as to warning signals measures the full duty of the company as to giving notice to travelers approaching the crossing of the imminence of the approach of a train, fall into three categories:

1. Those supporting the view that such compliance does not necessarily mark the railroad's entire duty and consequently a jury may base a finding of negligence upon the railroad's failure to give extra-statutory signals.

2. Those supporting the view that compliance with statutory provisions is all that is required at an ordinary railroad crossing, but not all that may be required of the railroad in the way of warning signals if the crossing is unusually dangerous.

3. Those supporting the view that, irrespective of the nature of the crossing, no more can be required of a railroad than fulfillment of applicable statutory requirements. 5 A. L. R. (2d), 115.

Ohio has adopted the intermediate view. *Cleveland, C., C. & I. Rd. Co.* v. *Schneider*, 45 Ohio St., 678, 694, 17 N. E., 321; *New York, C. & St. L. Rd. Co.* v. *Kistler*, 66 Ohio St., 326, 64 N. E., 130; *Weaver* v. *Columbus, S. & H. Ry. Co.*, 76 Ohio St., 164, 176, 81 N. E., 180: *Woodworth, Admx.*, v. *New York Cent. Rd. Co.*, 149 Ohio St., 543, 551, 80 N. E. (2d), 142; *Hood, a Minor*, v. *New York, C. & St. L. Rd. Co.*, 166 Ohio St., 529. 144 N. E. (2d), 104: *Croke* v. *Chesapeake & Ohio Ry. Co.*, 86 Ohio App., 483, 93 N. E. (2d), 311; *Lacey* v. *New York Cent. Rd. Co.*, 54 Ohio Law Abs., 417, 85 N. E. (2d), 540.

In the *Croke* and *Lacey cases*, an additional qualification was inadvertently added, namely: that before a question of additional precautions can be submitted to the jury there must be evidence that the crossing is unusually hazardous and *that it is*

*made so by the railroad company's use of it.* The italicized portion of the principle is inaccurate and misleading and is not supported by the decisions of the Supreme Court herein cited.[2]

The third paragraph of the syllabus in our decision in the *Croke case* is therefore modified by striking therefrom "and that it has been made so by the railroad's use of it."

With regard to a railroad's extra-statutory responsibility as a result of hazards at a crossing over which the railroad has no control, the Supreme Court has recently specifically held that a railroad is under no duty to provide extra-statutory warnings at a grade crossing, where such warnings are not required by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements. *Hood* v. *New York, C. & St. L. Rd. Co., supra* (166 Ohio St., 529). See, also, *Woodworth* v. *New York Cent. Rd. Co., supra* (149 Ohio St., 543, 551); *Tanzi* v. *New York Cent. Rd. Co.,* 155 Ohio St., 149, 154, 98 N. E. (2d), 39; *Gallagher* v. *New York Cent. Rd. Co.,* Court of Appeals, 6th District, unreported. In the instant case, the evidence tends to show that at certain periods the traffic over the crossing is heavy but that it was not unusually heavy at the time the collision occurred. There was no obstruction to plaintiff's view of the approaching train as she approached the crossing. Under such circumstances, there was presented no evidence that the crossing was unusually hazardous and the court erred in submitting that question to the jury. *Cleveland, C., C. & I. Rd. Co.* v. *Schneider, supra* (45 Ohio St., 678); *Weaver* v. *Columbus, S. & H. Ry. Co., supra* (76 Ohio St., 164); *Reed, Admr.,* v. *Erie Rd. Co.,* 134 Ohio St., 31, 51 N. E. (2d), 637; *Capelle* v. *Baltimore & Ohio Rd. Co.,* 136 Ohio St., 203, 24 N. E. (2d), 882; *Woodworth* v. *New York Cent. Rd. Co., supra* (149 Ohio St., 543); *Tanzi* v. *New York Cent. Rd. Co., supra* (155 Ohio St., 149); *Biery, Admx.,* v. *Penna. Rd. Co.,* 156 Ohio St., 75, 99 N. E. (2d), 895; *Hood* v. *New York, C. & St. L. Rd. Co., supra*

---

[2]In the *Kistler case* the court says that the trees, shrubbery and weeds outside the right of way, imposed no care or caution upon the company running the train, but this statement was made with respect to an ordinary grade crossing in the country.

(166 Ohio St., 529) ; *Croke* v. *Chesapeake & Ohio Ry. Co., supra* (86 Ohio App., 483) ; *Gallagher* v. *New York Cent. Rd. Co., supra*; *Lacey* v. *New York Cent. Rd. Co., supra* (54 Ohio Law Abs., 417).

With regard to the submission of the claim that the railroad was negligent in failing to maintain a sign or signal on the south side of the crossing in compliance with the provisions of Section 4955.33, Revised Code, the court apparently was persuaded to do so by *Baltimore & Ohio Rd. Co.* v. *Roudebush* (1930), 35 Ohio App., 471, 172 N. E. (2d), 559. See, also, *Richter* v. *Wheeling & Lake Erie Rd. Co.*, 13 Ohio Law Abs., 333, upon which the conflict was certified in *Reed* v. *Erie Rd. Co., supra*; *Loos* v. *Wheeling & Lake Erie Ry. Co.*, 60 Ohio App., 527, 22 N. E. (2d), 217, and *Baltimore & Ohio Rd. Co.* v. *Reeves,* 10 F. (2d), 329, decided prior to *Erie Rd. Co.* v. *Thompkins,* 304 U. S., 64, 82 L. Ed., 1188, 58 S. Ct., 817. In our opinion, the circumstances presented in the *Roudebush* and other cases are to be distinguished from those present in the instant case, and are covered by subsequent decisions of the Ohio Supreme Court.

Section 4955.33, Revised Code, is quite old, having been enacted in the horse and buggy age in 1852 (50 Ohio Laws, 278). The import of the language employed in the statute, as well as decisions referring to it, indicates that the statute requires but one sign with large and distinct letters placed on it to give notice of the proximity of the railroad. *Reed* v. *Erie Rd. Co., supra* (134 Ohio St., 31, 35) ; *Capelle* v. *Baltimore & Ohio Rd. Co., supra* (136 Ohio St., 203, 204) ; *Cobb, Jr., Admr.,* v. *Bushey,* 152 Ohio St., 336, 89 N. E. (2d), 466 ; *Hood* v. *New York, C. & St. L. Rd. Co., supra* (166 Ohio St., 529, 533). Its object is to warn travelers, unaware of the railroad crossing, of its existence. Cf. *Baltimore & Ohio Rd. Co.* v. *Whitacre,* 35 Ohio St., 627, 631 ; *Cobb* v. *Bushey, supra* (152 Ohio St., 336, 345).

The submission to the jury of the third specification of negligence was therefore error prejudicial to the defendant.

With respect to the fourth specification of negligence, there was uncontradicted evidence that a member of the train crew was keeping a lookout and warned the engineer when he became aware of the imminence of the collision. This issue should have been withdrawn from the jury.

The following errors occurred in the general charge:

Instructing the jury that it should determine whether under the circumstances the crossing was hazardous and whether defendant should have maintained additional warning devices.

Instructing that there is no duty other than the statutory duty to sound bell or whistle, unless the jury find from the evidence that the crossing was hazardous.

Submitting the question of whether the defendant had complied with the provisions of Section 4955.33, Revised Code, and that failure to do so is negligence per se.

Defendant contends that by its answer to the interrogatory, the jury found that the defendant was guilty of negligence in failing to erect another sign at the south side of the Napoleon Street crossing west of the Nickel Plate tracks, and that under the principle announced in the second paragraph of the syllabus in *Masters* v. *New York Cent. Rd. Co.*, 147 Ohio St., 293, 70 N. E. (2d), 898, the answer to the interrogatory is equivalent to a finding against the plaintiff on the remaining specification of negligence—failure to sound bell or whistle. The *Masters case* has been followed in *McBride* v. *Toledo Terminal Rd. Co.*, 166 Ohio St., 129, 140 N. E. (2d), 319 (reversed on other grounds, 354 U. S., 517, 1 L. Ed. (2d), 1534, 77 S. Ct., 1398); *Croke* v. *Chesapeake & Ohio Ry. Co.*, *supra* (86 Ohio App., 483); *Johnson* v. *Gernon, Jr.*, 91 Ohio App., 529, 107 N. E. (2d), 377; *Miljak* v. *Boyle*, 93 Ohio App., 169, 112 N. E. (2d), 340.

"When a special finding under Section 2315.16 of the Revised Code is inconsistent with the verdict, the former shall control the latter, and the court may give judgment accordingly." Section 2315.17, Revised Code. And where special findings of fact upon an issue properly submitted to the jury are clearly irreconcilable upon the record with the general verdict, it is the duty of the court to set aside or disregard the general verdict and to give judgment according to the special findings. *Central Gas Co.* v. *Hope Oil Co.*, 113 Ohio St., 354, 149 N. E., 386; *Columbus, Delaware & Marion Electric Co.* v. *O'Day, Admx.*, 123 Ohio St., 638, 176 N. E., 569; *Ohio Fuel Gas Co.* v. *Ringler*, 126 Ohio St., 409, 185 N. E., 553.

On the other hand, it is the duty of a court to harmonize if possible, a special finding of a jury with its general verdict.

Thus, where the answers are inconsistent or in direct conflict with each other, and it is impossible to harmonize them, they cancel each other and should be disregarded by the court. *Klever* v. *Reid Bros. Express, Inc.,* 151 Ohio St., 467, 86 N. E. (2d), 608. Nor will the answers to interrogatories authorize a judgment different from that authorized by a general verdict, where such answers can be reconciled with the general verdict. *McNees* v. *Cincinnati St. Ry. Co.,* 152 Ohio St., 269, 89 N. E. (2d), 138, approving and following *Davis* v. *Turner,* 69 Ohio St., 101, 68 N. E., 819, and *Ohio Fuel Gas Co.* v. *Ringler,* 126 Ohio St., 409, 185 N. E., 553. And to be inconsistent with the general verdict, it must appear that the special findings are irreconcilable, *in a legal sense,* with the general verdict on the ground that it is inconsistent with such special findings, the conflict must be clear and irreconcilable. *Davis* v. *Turner, supra.*

In the *Masters* and *McBride cases,* the interrogatories were properly submitted and the answers thereto were upon pertinent issues in the cases proper for the consideration and determination of the jury.[3]

In the instant case, the answer was upon an issue erroneously submitted to the jury and, in a legal sense, must be disregarded except as indicating that the erroneous submission of the issue was prejudicial. *Croke* v. *Chesapeake & Ohio Ry. Co., supra* (86 Ohio App., 483), second paragraph of the syllabus. The answer, therefore, was not irreconcilable, in a legal sense, with the general verdict.

Furthermore, there was sufficient, although conflicting, evidence to warrant the submission to the jury of the claim that the defendant failed to comply with the provisions of Section 4955.32, Revised Code. The jury could well have been misled by the erroneous admission of three additional specifications of negligence. Although the reasonable inference to be drawn from the answer is that the jury meant absence of another cross-buck sign, such inference is not conclusive. They may have thought there was insufficient warning of another kind or

---

[3]The negative rule adopted in the *Masters case* permits a reviewing court to ignore any errors that may have been assigned to other claims of negligence. Cf. *Masters* v. *New York Cent. Rd. Co., supra* (147 Ohio St., 293), and *McBride* v. *Toledo Terminal Rd. Co., supra* (166 Ohio St, 129).

432

character, such as by whistle. The rule in the *Masters case* is quite technical and a literal and rigid application should not be utilized to defeat a litigant who presents substantial, although disputed, evidence in support of an issue properly before the jury for its consideration and determination.

We therefore conclude that the answer to the interrogatory is not so irreconcilable with the verdict in a legal sense to require us to enter final judgment for the defendant. We admit the question is not free from doubt and that our judgment may be in conflict with that pronounced in *Johnson* v. *Gernon, supra,* and *Miljak* v. *Boyle, supra.*

The judgment of the Common Pleas Court is reversed and the cause is remanded thereto for a new trial.

*Judgment reversed.*

Deeds and Smith, JJ., concur.